1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          SAN JOSE DIVISION

11

12  XILINX, INC.,                               Case No. 14-CV-4963-LHK

13          Plaintiff,                          **ORDER GRANTING DEFENDANT'S**
                                                **MOTIONS TO DISMISS**
14      v.

15  PAPST LICENSING GMBH & CO.KG,

16          Defendant.

17  ALTERA CORPORATION,                         Related Case No. 14-CV-4794-LHK

18          Plaintiff,

19      v.

20  PAPST LICENSING GMBH & CO.KG,

21          Defendant.

22

23          Plaintiffs Altera Corporation ("Altera") and Xilinx, Inc. ("Xilinx") (collectively,

24  "Plaintiffs") seek declaratory judgment that their products do not infringe United States Patent

25  Nos. 6,704,891 and 6,574,759 (collectively "the patents-in-suit") and that the claims of the

26  patents-in-suit are invalid.  No. 14-CV-4794, ECF No. 1 ("Altera Compl."); No. 14-CV-4963,

27  ECF No. 1 ("Xilinx Compl.").  Before the Court are motions to dismiss filed by Papst Licensing

28

United States District Court
Northern District of California

GMBH & Co. KG ("Papst"), the owner of the patents-in-suit.  No. 14-CV-4794, ECF No. 18 ("Papst MTD-Altera"); No. 14-CV-4963, ECF No. 18 ("Papst MTD-Xilinx").  Papst, a German corporation headquartered in St. Georgen, Germany, moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  In the alternative, Papst asks this Court to transfer both actions to the U.S. District Court for the District of Delaware.  Altera and Xilinx filed oppositions (No. 14-CV-4794, ECF No. 45 ("Altera Opp."); No. 14-CV-4963, ECF No. 52 "Xilinx Opp.")), and Papst filed replies (No. 14-CV-4794, ECF No. 51 ("Papst Reply-Altera"); No. 14-CV-4963, ECF No. 56 ("Papst Reply-Xilinx")).[1]  Because the issues presented in Papst's motions are identical, and the facts nearly identical with respect to Altera and Xilinx, the Court resolves both motions in the instant order.

The Court finds this matter suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby vacates the motion hearings set for July 23, 2015, at 1:30 p.m.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Papst's motion to dismiss for lack of personal jurisdiction in both actions.

# I.    BACKGROUND

## A.    Factual Background

### 1.    The parties

Altera and Xilinx are Delaware corporations headquartered in San Jose, CA.  Altera Compl. ¶ 1; Xilinx Compl. ¶ 2.  Altera and Xilinx design and manufacture Field Programmable Gate Arrays (FPGAs), a type of semiconductor.  Altera Opp. 1; Xilinx Opp. 2.  FGPAs are programmable logic devices found in advanced electronic systems in a wide range of markets, including aerospace, wired and wireless communications, automotive, consumer electronics, high performance computing, medical, and broadcasting.  Xilinx Opp. 2.  Altera and Xilinx are competitors.  FGPAs manufactured by Altera, Xilinx, and Lattice Semiconductor ("Lattice")

---

[1] Much of the parties' briefing and accompanying exhibits was filed under seal.  The Court will rule on the parties' administrative sealing motions by separate order.  However, the facts revealed in the instant order, despite citing to documents the parties filed entirely under seal, are not sealable under Ninth Circuit authority.

2

1   comprise of 90% of the market.  Altera Opp. 1.

2          Papst, a non-practicing entity whose sole business is to monetize and license intellectual

3   property rights, has no offices or employees in California.  Papst MTD-Xilinx 2.  In the course of

4   its business, Papst has concluded more than 160 licensing agreements with various companies.

5   Altera Opp. 5; Xilinx Opp. 3.  Some of Papst's licensees are headquartered in California. *Id*. Papst

6   has pursued patent infringement claims against thirteen different companies in California courts.

7   Xilinx Opp. 11.

8                    **2.      Papst's acquisition of the patents-in-suit**

9          Papst acquired the patents-in-suit from FTE Exchange ("FTE"), a company incorporated

10  and headquartered in Texas, on October 2, 2012.  Xilinx Opp. 6.  Five days earlier, FTE had

11  acquired the patents-in-suit from Rambus, Inc. ("Rambus"), a Delaware corporation headquartered

12  in Sunnyvale, CA.  *Id*.  Under the Patent Purchase Agreement between Papst and FTE ("the Papst

13  Agreement"), Papst agreed to assume all of FTE's rights and obligations under the Patent

14  Purchase Agreement between FTE and Rambus ("the Rambus Agreement").  *Id*.

15         Pursuant to the Rambus Agreement, Rambus retained a "worldwide, perpetual, irrevocable,

16  fully paid-up, royalty free, non-exclusive, non-transferrable . . . right and license" to the patents-

17  in-suit.  *Id.* at 15.  In addition, FTE agreed not to sue thirty specifically-identified companies for

18  infringement of the patents-in-suit.  *Id.* at 7.  Six of those companies are based in California.  *Id.*

19         The Rambus Agreement also contains a clause entitled "Seller's Continued Assistance and

20  Reimbursement." Papst Reply-Xilinx 11. The clause states that "nothing set forth in this

21  Agreement shall create an obligation for [Rambus] to provide assistance or otherwise perform

22  services." *Id*. However, in the event that FTE, or its designated legal representative, requests

23  Rambus's assistance during prosecution, reexamination, or reissue of the patents, or requests

24  Rambus's expertise during interference, priority, infringement, or other court proceedings, FTE

25  must compensate Rambus for reasonable costs incurred. *Id*.

26         The Rambus Agreement stipulates that all disputes arising out of or relating to the Original

27  Purchase Agreement shall be resolved by a court in Santa Clara, California and be governed by

28
                                                  3

1   California law. Xilinx Opp. 6.

2       As owner of the patents-in-suit, Papst maintained a list of twenty-nine potential licensees,

3   twenty-eight of which have significant ties to California.  Xilinx Opp. 7.  Both Plaintiffs were

4   included on this list.  *Id.*  In addition, Papst retained a California-based law firm, which had

5   initially prosecuted the patents-in-suit, to ensure timely payment of PTO maintenance fees.  Xilinx

6   Opp. 15.

7                            **3.      Papst's negotiations with Plaintiffs**

8       In January and April 2014, Papst sent letters to Plaintiffs accusing each of infringing the

9   patents-in-suit and requesting that each take a license to the patents-in-suit.  Papst MTD-Xilinx 3;

10  Xilinx Opp. 5; Papst MTD-Altera 3; Altera Opp. 3.  Neither Plaintiff responded to the first letter,

11  but both responded to the second.  Papst MTD-Xilinx 3; Papst MTD-Altera 3; Altera Opp. 3.

12  Subsequently, on July 17, 2014, Papst's Managing Director and legal counsel met with Altera at

13  Altera's San Jose offices to discuss Papst's allegations of infringement.  However, the parties did

14  not agree to a licensing arrangement.  Papst MTD-Altera 3; Altera Opp. 3.  On October 16, 2014,

15  Papst's representatives met separately with both Altera and Xilinx in their respective San Jose

16  offices to discuss Papst's patent infringement allegations and potential licensing arrangements.

17  Xilinx Compl. ¶ 12; Xilinx Opp. 5.  Again, no licensing agreements were reached.

18        **B.      Procedural History**

19      On October 28, 2014, Altera filed this declaratory judgment action in this Court, seeking a

20  declaration that Altera does not infringe the patents-in-suit and that the patents-in-suit are invalid.

21  Altera Compl.  On November 7, 2014, Papst sued Lattice and Xilinx in the District of Delaware

22  alleging that they infringe the patents-in-suit.  *Papst Licensing GMBH & Co. KG v. Lattice*

23  *Semiconductor, Corp.*, No. 14-CV-1375-LPS-CJB (D. Del. Nov. 7, 2014); *Papst Licensing GMBH*

24  *& Co. KG v. Xilinx, Inc.*, No. 14-CV-1376-LPS-CJB (D. Del. Nov. 7, 2014).  Within hours, Xilinx

25  filed its declaratory judgment action against Papst in this Court, also seeking a declaration of non-

26  infringement and invalidity regarding the patents-in-suit.  Xilinx Compl.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    On December 4, 2014, Papst and Xilinx met again, this time in Palo Alto, CA, to continue

2 discussions regarding Papst's infringement allegations.  Xilinx Opp. 6.  Papst's California-

3 licensed counsel was present during this meeting.  *Id.*

4    On February 6, 2015, in nearly identical motions, Papst moved to dismiss both declaratory

5 judgment actions for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure

6 12(b)(2) and in the alternative to transfer venue to Delaware.  Papst MTD-Xilinx; Papst MTD-

7 Altera.  On February 17, 2015, Papst sued Altera in the District of Delaware, alleging patent

8 infringement.  *Papst Licensing GMBH & Co. KG v. Altera Corp.*, No. 15-CV-162-LPS-CJB (D.

9 Del. Feb. 17, 2015).

10    On February 19, 2015, Judge Freeman related the two actions pending in this district,

11 which were then reassigned to the undersigned.  No. 14-CV-4794, ECF No. 26; No. 14-CV-4963,

12 ECF No. 32.

13    On February 24, 2015, Papst and Xilinx met a third time, this time at Xilinx's San Jose

14 headquarters, to discuss the pending litigation and potential licensing arrangements.  Xilinx Opp.

15 5-6.  No agreement was reached.

16 **II.    LEGAL STANDARD**

17    **A.    Rule 12(b)(2)**

18    Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to

19 Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

20 jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as

21 here, the defendant's motion is based on written materials rather than an evidentiary hearing, the

22 plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to

23 dismiss for lack of personal jurisdiction.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

24 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127

25 (9th Cir.2010)); *see also Celgard, LLC v. SK Innovation Co.*, No. 2014-1807 (Fed. Cir. July 6,

26 2015), slip op. at 7 ("When the district court's determination of personal jurisdiction is based on

27 affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff

28

5

1   usually bears only a prima facie burden.").  At this stage of the proceeding, "uncontroverted

2   allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained

3   in the parties' affidavits must be resolved in plaintiff's favor."  *Brayton Purcell*, 606 F.3d at 1127

4   (internal quotation marks, citations, and alterations omitted).  "If the district court concludes that

5   the existing record is insufficient to support personal jurisdiction . . . [jurisdictional] discovery is

6   appropriate where the existing record is inadequate to support personal jurisdiction and a party

7   demonstrates that it can supplement its jurisdictional allegations through discovery."  *Trintec*

8   *Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005) (quotation

9   and citation omitted).

10          **B.       Personal Jurisdiction**

11          Because the issue of personal jurisdiction in a declaratory action for non-infringement is

12   "intimately related to patent law," Federal Circuit law governs.  *Breckenridge Pharm., Inc. v.*

13   *Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (citation omitted).

14          There are two limitations on a court's power to exercise personal jurisdiction over a

15   nonresident defendant: the applicable state's long-arm statute and constitutional due process.

16   *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1230 (Fed. Cir.

17   2010) (quoting *3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373, 1376–77 (Fed. Cir. 1998))

18   (quotation marks omitted).  California's long-arm statute reads: "A court of this state may exercise

19   jurisdiction on any basis not inconsistent with the Constitution of this state or of the United

20   States."  Cal. Civ. Proc. Code § 410.10.  Thus, because California's long-arm statute is coextensive

21   with constitutional due process requirements, the jurisdictional analysis collapses into a single due

22   process inquiry.  *Nuance*, 626 F.3d at 1230.

23           Due process precludes a court from asserting jurisdiction over a defendant unless the

24   defendant has minimum contacts with the forum state such that an exercise of jurisdiction would

25   not offend "traditional conception[s] of fair play and substantial justice."  *Int'l Shoe Co. v.*

26   *Washington*, 326 U.S. 310, 320 (1945).  The minimum contacts requirement ensures "that non-

27   residents have fair warning that a particular activity may subject them to litigation within the

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1565 (Fed. Cir.

2    1994) (citations omitted).

3        The "minimum contacts" requirement can be satisfied in two ways: general jurisdiction or

4    specific jurisdiction.  General jurisdiction applies where a nonresident defendant's "affiliations

5    with the State are so 'continuous and systematic' as to render it essentially at home in the forum

6    state." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires*

7    *Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 (2011)).   Where general jurisdiction is

8    inappropriate, the court may still exercise specific jurisdiction where "the defendant has

9    purposefully directed his activities at residents of the forum and the litigation results from alleged

10   injuries that arise out of or relate to those activities.'" *Deprenyl Animal Health, Inc. v. Univ. of*

11   *Toronto Innovations Found.,* 297 F.3d 1343, 1350–51 (Fed. Cir. 2002) (quoting *Inamed Corp. v.*

12   *Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

13       If the minimum contacts requirement is satisfied for general jurisdiction, the inquiry ends.

14   *See Daimler*, 134 S. Ct. at 762 n.20 (noting that when under general jurisdiction analysis, "if a

15   corporation is genuinely at home in the forum state . . . [a fairness factor analysis] would be

16   superfluous").   On the other hand, when "it has been decided that a defendant purposefully

17   established minimum contacts within the forum State" to sustain specific jurisdiction, "these

18   contacts may be considered in light of other factors to determine whether the assertion of personal

19   jurisdiction would 'comport with fair play and substantial justice.'" *Burger King Corp. v.*

20   *Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe,* 326 U.S. at 320).  "The unique burdens

21   placed upon one who must defend oneself in a foreign legal system should have significant weight

22   in assessing the reasonableness of stretching the long arm of personal jurisdiction over national

23   borders." *Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1417 (Fed. Cir. 2009)

24   (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 114 (1987)).

25   **III.    DISCUSSION**

26       The Court will first address Plaintiffs' contentions that the Court has general jurisdiction

27   over Papst, before turning to the issue of specific jurisdiction.

28
Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

### A.     General Jurisdiction

In *Daimler*, the U.S. Supreme Court established that a court may assert general jurisdiction over a nonresident defendant only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853-54). The Court rejected the argument that a nonresident defendant should be subject to general jurisdiction "in every State in which [the defendant] engages in a substantial, continuous, and systematic course of business," finding that such a holding would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 760. Nevertheless, the Court noted that in an "exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19.

Plaintiffs argue that Papst is subject to general jurisdiction in California because its substantial patent monetization activities constitute "continuous and systematic" business contacts. Xilinx Opp. 10; Altera Opp. 5. Plaintiffs argue that taken together, Papst's past patent infringement suits in California courts, licensing agreements with California companies, revenue from doing business in California, and California-based counsel constitute sufficient contacts to subject Papst to any and all types of suits in California. Altera Opp. 5-6; Xilinx Opp. 10-14. Xilinx also argues that "because of the technical subject matter of Papst's patent holdings . . . [Papst's] business model is constructed around patent enforcement against targets located in California, home to the world's technology capital, Silicon Valley." Xilinx Opp. 10.

Papst is not incorporated in California, nor does it have its principal place of business here. These facts, alone, are strong evidence that Papst is not at home in California. *Daimler*, 134 S. Ct. at 760; *see also Goodyear*, 131 S. Ct. at 2853-54 (noting that "the paradigm forum for the exercise

8

1    of general jurisdiction . . . [is the corporation's] domicile, place of incorporation, and principal

2    place of business" (citation omitted)).  Moreover, even if Papst's business contacts are

3    "continuous and systematic," a defendant's "substantial, continuous, and systematic course of

4    business" within a state is insufficient to justify an exercise of general jurisdiction over the

5    defendant.  *Daimer*, 134 S. Ct. at 761; *see also Google Inc. v. Rockstar Consortium U.S. LP.*, No.

6    13-CV-5933-CW, 2014 WL 1571807, at *5 (N.D. Cal. Apr. 17, 2014) ("Even if it is true that

7    Defendants engage in 'continuous and systematic' business in the forum state, that does not mean

8    that Defendants' presence in the forum state is so substantial that it should fairly be subject to suit

9    'on causes of action arising from dealings entirely distinct from those activities.'" (quoting

10   *Daimler*, 134 S. Ct. at 761)).  Papst's contacts with the state of California are plainly insufficient

11   to subject it to the general jurisdiction of California.

12        Merely conducting business in California from a home base in Germany is not

13   "exceptional," even when such business generates substantial revenue.  In *Daimler*, the U.S.

14   Supreme Court held that Daimler AG, the German manufacturer of Mercedes-Benz automobiles,

15   was not subject to general jurisdiction in California "despite its multiple offices, continuous

16   operations, and billions of dollars' worth of sales there."  134 S. Ct. at 772 (Sotomayor, J.,

17   concurring).  Similarly, merely "targeting" the Silicon Valley technology industry with one's

18   patent licensing business is insufficient to confer general jurisdiction.  *Rockstar*, 2014 WL

19   1571807, at *5 (holding that an exercise of general jurisdiction over a Canadian non-practicing

20   entity was not justified even though the defendant's "patent licensing business" targeted Silicon

21   Valley).  If the U.S. Supreme Court held that the German manufacturer of Mercedes-Benz

22   automobiles was not subject to general jurisdiction in California, then California certainly lacks

23   general jurisdiction over Papst, which has far more modest ties to California than the largest

24   importer of luxury vehicles to this state.  *See Daimler*, 134 S. Ct. at 752.  Thus, the Court

25   determines that this is not an "exceptional case" in which Papst's business contacts with California

26   are "so substantial" as to "essentially render it at home" in California.  *Id.* at 761 n.19.

27        Moreover, the U.S. Supreme Court has only found general jurisdiction to exist over a

28

Case Nos. 14-CV-4963-LHK; 14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1    nonresident defendant in one instance.  In *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437

2    (1952), the U.S. Supreme Court held that the defendant, a mining company based in the

3    Philippines, was subject to general jurisdiction in Ohio because the defendant's president directed

4    all of the company's activities from Ohio.  The *Daimler* Court noted that *Perkins* was an

5    "exceptional case" because the defendant's mining operations in the Philippines were halted by

6    Japanese wartime occupation of the Philippines.  134 S. Ct. at 761 n.19.  As a result, the Court

7    found that Ohio could be considered the defendant's "surrogate for the place of incorporation or

8    head office" and "principal, if temporary, place of business."  *Daimler*, 134 S. Ct. at 756 & n.8

9    (citations omitted).  Here, Plaintiffs allege no similar facts to support the proposition that

10   California can be considered Papst's surrogate place of incorporation or temporary place of

11   business.

12        Plaintiffs' reliance on *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F.

13   Supp. 2d 383 (E.D.N.Y. 2013), is misplaced.  *JetBlue* held, pre-*Daimler*, that an Illinois non-

14   practicing entity with a principal place of business in Arizona was subject to the general

15   jurisdiction of New York because it "derive[d] significant economic benefit from substantial

16   ongoing activities within [New York]."  *Id.* at 388.  The court noted that in the course of its patent

17   monetization business, the respondent entered into twenty-two licensing agreements with New

18   York companies, sent letters to thirty-four New York companies, and generated three million

19   dollars in revenue from New York companies.  *Id.* at 394.  The court noted that "[a] large out-of-

20   state company . . . that derives some ten percent of its revenue from New York . . . has sufficiently

21   aimed its activities into New York for general jurisdiction to apply."  *Id.* at 395.   In light of

22   *Daimler's* caution that even "substantial, continuous, and systematic" business within a state

23   cannot justify an exercise of general jurisdiction when the defendant is not "at-home" in that state,

24   this Court determines that *JetBlue* is inconsistent with *Daimler* and should not be followed.

25        For the foregoing reasons, this Court lacks general jurisdiction over Papst.

26   **B.       Specific Jurisdiction**

27        Where a defendant is not subject to general jurisdiction in the forum state, a district court

28

                                            10

United States District Court
Northern District of California

may nonetheless exercise specific jurisdiction over the defendant if (1) the defendant purposefully directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction does not violate fair play and substantial justice. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).  "[T]he plaintiff bears the burden to establish minimal contacts," and if successful, the defendant "must prove that the exercise of jurisdiction is unreasonable." *See, e.g.*, *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

In a declaratory judgment action for non-infringement, not all activities related to the patents-in-suit are relevant jurisdictional contacts. *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1332-33 (Fed. Cir. 2008).  Instead, only activities that "relate to" the *enforcement* of the patents-in-suit are relevant to the "arises out of" prong. *Id.*  As the Federal Circuit has explained, "in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit.'" *Id.* (citing *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  Thus, a declaratory judgment action for non-infringement does not "arise out of" or "relate to" activities such as the defendant's manufacturing, use, offer for sale, or sale of goods in the forum. *Avocent*, 552 F.3d at 1332-33.  Rather, the declaratory judgment "arises out of" or "relates to" the defendant's enforcement of the patents in the forum. *Id.* at 1334.  Thus, the proper inquiry is whether any of the defendant's activities "relate to the *enforcement* or the *defense of the validity* of the [patents-in-suit]." *Id.*

However, even if the "purposefully directed" and "arises out of" prongs are satisfied by the defendant's enforcement activities, asserting jurisdiction based on such activities must still comport with "fair play and substantial justice." *Id.* at 1333.  Not all assertions of jurisdiction based on enforcement activities comport with "fair play and substantial justice." *Id.*  For example, the Federal Circuit has held that based on "policy considerations unique to the patent context,"

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1   courts cannot assert jurisdiction on the sole basis of cease-and-desist letters sent into the state.

2   *Red Wing Shoe*, 148 F.3d at 1359-61.  The Federal Circuit has explained:

3              Principles of fair play and substantial justice afford a patentee
              sufficient latitude to inform others of its patent rights without
4             subjecting itself to jurisdiction in a foreign forum.   A patentee
              should not subject itself to personal jurisdiction in a forum solely by
5             informing a party who happens to be located there of suspected
              infringement.    Grounding personal jurisdiction on such contacts
6             alone would not comport with principles of fairness.

7   *Id.* at 1360-61.

8         Similarly, "a defendant may not be subjected to personal jurisdiction if its only additional

9   activities in the forum state involve unsuccessful plans to license the patent there." *Breckenridge*,

10  444 F.3d at 1366 (citing *Hildebrand v. Steck Mfg.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002)).  Nor

11  can a court exercise personal jurisdiction over a defendant "where the defendant has successfully

12  licensed the patent in the forum state, even to multiple non-exclusive licensees, but . . . has no

13  dealings with those licensees beyond the receipt of royalty income." *Breckenridge*, 444 F.3d at

14  1366 (citing *Red Wing Shoe*, 148 F.3d at 1357-58).

15        In contrast, jurisdiction is proper if it is premised on "other activities that relate to the

16  *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334.

17  "Other activities" include "initiating judicial or extra-judicial patent enforcement within the forum,

18  or entering into an exclusive license agreement or other undertaking which imposes enforcement

19  obligations with a party residing or regularly doing business in the forum." *Id.*; *see Campbell Pet*

20  *Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee who enlisted

21  a third party to remove defendant's products from a trade show in the forum state); *Breckenridge,*

22  444 F.3d at 1366 (finding jurisdiction where the defendant entered into an exclusive license with a

23  company that conducted business in Florida.); *Inamed,* 249 F.3d at 1361 (finding jurisdiction over

24  a patentee who had previously granted the plaintiff an exclusive license to practice the inventions

25  claimed in the relevant patents); *Akro Corp. v. Luker*, 45 F.3d 1541, 1548–49 (Fed. Cir. 1995)

26  (finding jurisdiction over patentee who had an exclusive license with a forum resident, where the

27  license agreement also "oblige[d] [the patentee] 'to defend and pursue any infringement against'

28

United States District Court
Northern District of California

1    the [relevant] patent").

2        Plaintiffs allege that Papst is subject to specific jurisdiction for several reasons: (1) Papst's

3    letters to Altera and Xilinx (2) Papst's in-person meetings with Altera and Xilinx in California, (3)

4    Papst's "list of patent enforcement targets," (4) Papst's obligations which Papst assumed when

5    purchasing the patents-in-suit from FTE, (5) Papst's retention of California attorneys to pay PTO

6    maintenance fees for the patents-in-suit, (6) Papst's retention of Mr. Ellwanger, a Texas-based

7    lawyer who is licensed in California, to represent Papst in licensing negotiations, (7) Papst's

8    alleged threatening of Altera customers, and (8) Papst's prior patent infringement lawsuits in

9    California involving other patents.  The Court addresses each in turn, and for the reasons

10   explained below determines that these contacts as a whole are insufficient to support an exercise

11   of specific jurisdiction over Papst in this case.

12               **1.     Papst's letters to Altera and Xilinx**

13       While Plaintiffs characterize Papst's letters as "patent enforcement letters" directed to the

14   forum as part of Papst's enforcement efforts, the letters themselves are nothing more than cease-

15   and-desist letters.  Altera admits that "Altera received a letter from Papst asserting that Altera

16   needed to *take a license* to two patents [owned by] Papst."  Altera Opp. 3 (emphasis added).

17   Xilinx admits that "[i]n separate January and April 2014 letters, Papst Licensing accused Xilinx

18   and Altera of infringing the patents-in-suit and urged Xilinx and Altera to *take a license*."  Xilinx

19   Opp. 5 (emphasis added).  Because under well-established Federal Circuit precedent, cease-and-

20   desist letters are insufficient to confer specific jurisdiction, this Court cannot assert specific

21   jurisdiction over Papst unless Papst has sufficient "other activities" in the forum.  *Breckenridge*,

22   444 F.3d at 1363; *Red Wing Shoe*, 148 F.3d at 1360-61 ("Principles of fair play and substantial

23   justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting

24   itself to jurisdiction in a foreign forum.").  Indeed, in *Avocent*, the Federal Circuit made clear that

25   "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not

26   suffice to create personal jurisdiction."  552 F.3d at 1333 (internal quotation omitted).

27   Accordingly, Papst's letters are insufficient by themselves to create personal jurisdiction.

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.     Papst's in-person meetings with Altera and Xilinx in California

Papst's meetings with Altera and Xilinx in California are similarly insufficient to support an exercise of jurisdiction over Papst because they are "mere attempts to license" the patents-in-suit. *Breckenridge*, 444 F.3d at 1366.  The Federal Circuit has held that "a defendant may not be subjected to personal jurisdiction if its only additional activities in the forum state involve unsuccessful attempts to license the patent there." *Id.* (citing *Hildebrand*, 279 F.3d at 1356).  In *Hildebrand*, the Federal Circuit held that an Ohio district court could not exercise personal jurisdiction over the defendant, a Colorado resident, on the basis of cease-and-desist letters and attempts to negotiate a license agreement.  279 F.3d at 1356.  The defendant in *Hildebrand*, a Colorado resident, sent cease-and-desist letters to corporations in Ohio.  *Id.*  In addition, "as part of an offer to do business," the defendant mailed a sample set of products to the plaintiff.  *Id.*  The court found that because the product was not injected into the forum for any purpose other than to negotiate a license, it does not constitute a separate contact and did not create a constitutionally adequate basis for personal jurisdiction.  *Id.*  Because all of Hildebrand's contacts with the forum "were for the purpose of warning against infringement or negotiating license agreements, and he lacked a binding obligation in the forum," the Federal Circuit held that "[t]he accumulation of Hildebrand's contacts with Ohio do not create a constitutionally adequate basis for personal jurisdiction."  *Id.*

In the instant case, Papst's meetings in California are not "for any purpose other than to negotiate a license," and thus serve as inadequate bases for this Court to exercise jurisdiction. While Plaintiffs characterize the six in-person meetings as "patent enforcement meetings," Plaintiffs concede that the meetings involved nothing more than accusations of infringement and attempts to license the patents-in-suit.  Altera Opp. 7; Xilinx Opp. 5.  Altera admits that the "*sole purpose of Papst's in-person meetings was to present a potential infringement case and negotiate the terms of a license agreement.*"  Altera Opp. 7 (emphasis added).  Xilinx concedes that "[Papst representatives] traveled to California to meet separately with Xilinx and Altera *in attempt to license the patents-in-suit.*"  Xilinx Opp. 5 (emphasis added).  Because Papst's in-person meetings

14

1    are nothing more than "mere attempts to license the patent at issue," *Breckenridge*, 444 F.3d at

2    1366, Papst's in-person meetings do not warrant a finding of specific jurisdiction.

3          Further, no Federal Circuit case has found that in-person licensing negotiations in the

4    forum state are sufficient to vest that state with specific jurisdiction over a patentee.  While the

5    Federal Circuit has not expressly said so,[2] the Federal Circuit's decision in *Autogenomics, Inc. v.*

6    *Oxford Gene Technology Ltd.*, 566 F.3d 1012 (2009), suggests that in-person licensing

7    negotiations cannot justify an exercise of specific jurisdiction.  In *Autogenomics*, two

8    representatives of the defendant patentee, Oxford, flew to California to conduct licensing

9    negotiations with the plaintiff, Autogenomics.  *Id.* at 1015.  The parties failed to agree on license

10   terms.  *Id.*  The district court concluded that "in-person negotiations between Oxford and

11   Autogenomics were 'clearly analogous to the cease-and-desist' communications at issue in the

12   bevy of cases on this subject."  *Id.* at 1019 (citation omitted).  On appeal, Autogenomics conceded

13   that after the Federal Circuit's decision in *Avocent*, the in-person licensing negotiations were no

14   longer relevant contacts for the specific jurisdiction inquiry.  *Id.* at 1021 ("Autogenomics had

15   originally argued that Oxford had nine types of contacts with California. In its supplemental brief,

16   Autogenomics concedes that our 'holding in *Avocent* eliminated seven of those nine types of

17   contacts . . . explain[ing] that only the [joint venture contract and the licenses] were still relevant

18   to the specific jurisdiction inquiry.").

19         Courts in this district have been more explicit in finding that in-person licensing

20   negotiations do not constitute "enforcement activities" sufficient to justify an exercise of specific

21

22   [2] Papst contends that in *Radio Systems*, the Federal Circuit held that "multiple licensing meetings in forum state insufficient [sic] to establish specific jurisdiction."  Papst MTD-Xilinx 8.  However, the in-person meetings in *Radio Systems* did not involve *licensing* negotiations, but rather, the

23   defendant inventor's attempts to commercialize his patented product.  *See* 738 F.3d at 788.  In *Avocent*, the Federal Circuit held that "the defendant patentee's own commercialization activity

24   does not" sustain "specific personal jurisdiction in a declaratory judgment action."  *Avocent*, 552 F.3d at 1335.  "What the patentee makes, uses, offers to sell, sells, or imports is of no real

25   relevance to the enforcement or defense of a patent, because the federal patent laws do not create any affirmative right to make, use, or sell anything."  *Id.* (citations and internal quotations

26   omitted).  Thus, *Radio Systems* simply held, consistent with *Avocent*, that attempts at commercializing one's patented product is not "enforcement activity" that can justify a finding of

27   specific jurisdiction.

28

Case Nos. 14-CV-4963-LHK; 14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1    jurisdiction.  In *Square, Inc. v. Morales*, No. 13-CV-1431-SBA, 2013 WL 6199281 (N.D. Cal.

2    Nov. 27, 2013), the court refused to exercise specific jurisdiction over the defendant, Morales,

3    despite the fact that Morales traveled from Texas to San Francisco to threaten Square with

4    infringement and to attempt to negotiate a deal.  *Id.* at *2.  The Court found that Morales' attempt

5    to meet with Square's legal counsel in San Francisco was "for the purpose of informing Square of

6    its infringing activity and/or negotiating a business agreement with Square," and therefore

7    insufficient to satisfy the requirements of due process.  *Id.* at *5.  In the instant case, Papst,

8    similarly, traveled to California to inform Plaintiffs of Plaintiffs' infringing activities and to

9    negotiate a license with Plaintiffs relating to the patents-in-suit.  Altera Opp. 6.

10        Here, as in *Autogenomics* and *Square*, the in-person meetings that transpired between the

11   parties in California were analogous to cease-and-desist communications and failed license

12   negotiations that the Federal Circuit has held to be insufficient to vest the Court with specific

13   jurisdiction over a declaratory judgment defendant.  Thus, this Court finds that an exercise of

14   specific jurisdiction is not justified on the basis of Papst's failed in-state licensing negotiations.

### 3.    Papst's "list of patent enforcement targets"

16        Plaintiffs allege that Papst's list of "license targets" constitutes "enforcement activities,"

17   although Plaintiffs do not contend that Papst has contacted any of these "targets," much less

18   actually pursued licensing agreements with them. *See* Xilinx Opp. 16.

19        The Court determines that maintaining a list of license targets is simply an activity related

20   to Papst's attempts to license the patents-in-suit.  Such activity, as explained above, is insufficient

21   under Federal Circuit case law to support an exercise of specific jurisdiction.  *Breckenridge*, 444

22   F.3d at 1366 ("a defendant may not be subjected to personal jurisdiction if its only additional

23   activities in the forum state involve unsuccessful plans to license the patent there").  If actual

24   contact with targets, cease-and-desist letters, and in-person licensing negotiations cannot justify an

25   exercise of specific jurisdiction, the mere act of maintaining a list of potential license targets,

26   without more, cannot.  *See Breckenridge*, 444 F.3d at 1366 (noting that "the crux of the due

27   process inquiry should focus first on whether the defendant has had contact with parties in the

28

16

1    forum state beyond the sending of cease-and-desist letters or mere attempts to license the patent at

2    issue there").

3            Thus, Papst's maintenance of a list of license targets is simply in furtherance of Papst's

4    attempts to license the patents-in-suit and is insufficient to subject Papst to the jurisdiction of this

5    Court.

6            **4.    Papst's obligations which Papst assumed when purchasing the patents-in-suit from FTE**

7

8            As set forth in section I.A.2, Papst acquired the patents-in-suit from FTE, who had

9    acquired the patents-in-suit five days earlier from Rambus.  Xilinx Opp. 6.  Under the purchase

10   agreement between Papst and FTE ("Papst Agreement"), Papst agreed to assume all of FTE's

11   rights and obligations under FTE's purchase agreement with Rambus ("Rambus Agreement").  *Id.*

12           Plaintiffs argue that Papst's obligations under the Rambus Agreement are enough to confer

13   specific jurisdiction over Papst.  Xilinx Opp. 15.  Specifically, Plaintiffs contend that Rambus's

14   "obligation" to support Papst's efforts to monetize the patents-in-suit creates a continuing patent-

15   related obligation between Papst and a California resident sufficient to satisfy due process.  *Id.*

16   Plaintiffs further argue that the California choice of law and forum selection provisions of the

17   Rambus Agreement, which Papst accepted when Papst purchased the patents-in-suit from FTE,

18   are sufficient to support an exercise of specific jurisdiction over Papst.  *Id.*  As explained below,

19   the Court disagrees.

20                   **a.    Non-exclusive vs. exclusive license**

21           First, the Rambus Agreement grants Rambus a non-exclusive, as opposed to exclusive,

22   license.  The Federal Circuit has drawn a distinction between a licensor's relationship to an

23   exclusive licensee, on the one hand, and a licensor's relationship to a non-exclusive licensee on

24   the other.  *See, e.g.*, *Akro*, 45 F.3d at 1546 (holding that jurisdiction is proper where the defendant

25   grants a licensee in the forum an *exclusive* license that includes the right to litigate infringement

26   claims).  The mere grant of a non-exclusive license to an in-state licensee does not subject the

27   licensor to personal jurisdiction in that state, while the grant of an exclusive license may if it

28

United States District Court
Northern District of California

17

1   imposes enforcement obligations.  *See Breckenridge*, 444 F.3d at 1366 ("the defendant is subject

2   to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum

3   state licensee *if* the license agreement, for example, requires the defendant-licensor, and grants the

4   licensee the right, to litigate infringement claims." (emphasis added)).  Here, the fact that Rambus,

5   a California resident, is a non-exclusive licensee is insufficient to create personal jurisdiction over

6   Papst.

### b.    Continuing obligations

8          Second, for a licensor to be subject to personal jurisdiction in the forum of the licensee,

9   "the license agreement [must] contemplate a relationship beyond royalty or cross-licensing

10  payment, such as granting both parties the right to litigate infringement cases[,] granting the

11  licensor the right to exercise control over the licensee's sales or marketing activities," *id.*, or

12  "impos[ing] enforcement obligations with a party residing or regularly doing business in the

13  forum." *Avocent*, 552 F.3d at 1334.  The license agreement must create continuing obligations

14  between the defendant and the forum state.  *Id.*

15         In the instant case, the "Seller's Continued Assistance and Reimbursement" clause "relates

16  to" the enforcement and defense of the patent.  The clause states that in the event that Papst

17  requests Rambus's expertise during interference, priority, infringement, or other court

18  proceedings, and Rambus performs those services, Papst must compensate Rambus for reasonable

19  costs incurred.  Nonetheless, this Court finds that the "Seller's Continued Assistance and

20  Reimbursement" clause is an insufficient basis for this Court to exercise jurisdiction over Papst

21  because the agreement neither establishes any "continuing obligations" between Papst and

22  Rambus nor "imposes enforcement obligations with a party residing or regularly doing business in

23  the forum." *Avocent*, 552 F.3d at 1334.  Indeed, the clause expressly states that "nothing set forth

24  in this Agreement shall create an obligation for [Rambus] to provide assistance or otherwise

25  perform services." Xilinx Opp. 15.  Further, nothing in the Rambus Agreement (a) compels Papst

26  to take any affirmative action in California, (b) gives the California licensees any "enforcement

27  rights over the patents," or (c) grants Papst any right to exercise control over Rambus's business

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1  activities.

2                    c.      **Choice of law and forum selection clause**

3           Finally, the Court is not persuaded by Plaintiffs' argument that the choice of law and

4  forum selection clause in the Rambus Agreement necessitates a different conclusion.  Xilinx Opp.

5  15.  This clause of the Rambus Agreement provides that "This Agreement shall be governed

6  by . . . the laws of California" and that "a court of competent jurisdiction located in Santa Clara,

7  California shall have sole and exclusive jurisdiction with respect to any dispute or controversy

8  arising out of or relating to this Agreement."  Xilinx Opp., Exhibit 29 at § 11.5.  This clause does

9  not apply to the instant declaratory judgment actions for at least two reasons.

10          First, this clause governs disputes arising out of or relating to the purchase agreement

11  between Rambus and FTE, and not expressly about enforcement actions or declaratory judgment

12  actions regarding the patents-in-suit.  "Even with a more permissive view of the 'relates to'

13  requirement when it comes to the 'other activities' that help establish minimum contacts, the

14  Federal Circuit has held that a forum-selection clause does not convey personal jurisdiction over a

15  defendant unless the plaintiff's claims arise out of the agreement containing the clause."

16  *Paramount Pictures Corp. v. Nissin Corp.*, No. 2:14-CV-04624-ODW, 2014 WL 5528455, at *6

17  (C.D. Cal. Nov. 3, 2014) (finding that California choice of forum provisions in a non-disclosure

18  and license agreement with a third party did not help establish minimum contacts for the purposes

19  of personal jurisdiction).  In the instant case, Plaintiffs' claims arise out of Plaintiffs' allegedly

20  infringing activities and the validity of the patents-in-suit, and thus the California choice of law

21  and forum selection clauses do not help establish minimum contacts for the purposes of personal

22  jurisdiction.  *Paramount*, 2014 WL 5528455, at *6.  The Rambus Agreement, at best, shows

23  Papst's intent to be subject to California courts should the Rambus Agreement be violated, not for

24  subsequent declaratory judgment actions concerning the infringement or validity of the patents-in-

25  suit.  *See Big Lots Stores, Inc. v. Sorensen Research & Development Trust*, No. 08-CV-506, 2009

26  WL 4547599, at *5 (S. D. Ohio Dec. 2, 2009) (holding no personal jurisdiction despite the

27  presence of a forum selection clause in a non-exclusive license agreement because "the agreement

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

*United States District Court*
*Northern District of California*

1   . . . merely shows Defendant's intent to be subject to Ohio courts should *that specific agreement*

2   be violated; the agreement shows no intent on the part of Defendant to be subjected to Ohio courts

3   when responding to potential infringement by other entities *that are not parties* to that

4   agreement"). Moreover, Plaintiffs are not parties to the Rambus Agreement. *Id.*

5       Second, unlike the Rambus Agreement, the Papst Agreement has a choice of law and

6   forum selection clause in favor of Texas, not California. Specifically, any disputes regarding the

7   Papst Agreement "shall be governed by the substantive law of the State of Texas, USA, exclusive

8   of its choice of law rules," and "[a] court of competent jurisdiction located in Marshall, State of

9   Texas, USA shall have sole and exclusive jurisdiction in any dispute or controversy arising out of

10  or relating to this Agreement." Altera Opp., Exhibit K at PAPST-JURIS-0334.

11      Most significantly, the Court has not found, and Plaintiffs do not cite, any authority finding

12  specific jurisdiction in a declaratory judgment action based on a choice of law and forum selection

13  clause in an assignment within a patent's chain of title. Papst's purchase of the patents-in-suit,

14  where a prior assignment of the patents-in-suit contained a choice of law and forum selection

15  clause in favor of California, does not constitute the type of purposeful availment sufficient to vest

16  California with specific jurisdiction over Papst for every declaratory judgment action involving

17  the patents-in-suit.

18      The Court thus finds that the Rambus Agreement is an insufficient basis for exercising

19  jurisdiction over Papst.

20      **5.    Papst's retention of California attorneys to pay PTO maintenance fees
21           for the patents-in-suit**

22      Plaintiffs also argue that specific jurisdiction may be premised on Papst's retention of

23  California patent attorneys to maintain the patents-in-suit. Xilinx Opp. 15-16. The simple act of

24  retaining a patent attorney based in California to make the three[3] maintenance fee payments during

25  the twenty-year patent term are insufficient contacts to vest California with personal jurisdiction

26

27  _____

    [3] Maintenance fees on a utility patent are paid to maintain a patent in force beyond 4, 8, and 12
    years after the date of grant. *See* 37 C.F.R. § 1.362.

28                                          20

United States District Court
Northern District of California

over a declaratory judgment action challenging the validity of that patent.  Plaintiffs do not allege

that the patent attorneys are involved in enforcing the patents.  Rather, Plaintiffs merely contend

that the patent attorneys pay maintenance fees to the PTO.  *Id.*  This Court knows of no authority,

nor does Plaintiff cite any authority, that premises specific jurisdiction on such insubstantial

contacts.[4]  Thus, the Court finds that Papst's use of California attorneys to pay PTO maintenance

fees is an insufficient basis for personal jurisdiction.

### 6.   Papst's retention of Mr. Ellwanger

Plaintiffs also allege that Papst hired Mr. Ellwanger, a Texas-based, California-licensed

counsel, to "represent it in its extrajudicial patent enforcement activities directed at California."

Xilinx Opp. 16.

Mr. Ellwanger is not a resident of California, nor does he keep an office or home in

California.  Papst Reply-Xilinx 14.  Instead, Mr. Ellwanger is based in Texas.  Plaintiffs' theory

would subject Papst to the jurisdiction of any state in which Papst's lawyers are licensed.  Papst's

relationship with Mr. Ellwanger is not an "undertaking which imposes enforcement obligations

with a party residing or regularly doing business in the forum."  *Avocent*, 552 F.3d at 1334.  The

fact that a Texas lawyer, who happens to be licensed in California, attempted to negotiate a patent

license on behalf of a German corporation does not constitute sufficient contacts attributable to

Papst.  The Court thus concludes that Mr. Ellwanger's presence in licensing negotiations is

insufficient to justify an exercise of jurisdiction over Papst.

Therefore, this Court finds that Papst's retention of Mr. Ellwanger is not a sufficient basis

for jurisdiction.

### 7.   Papst's alleged threating of Altera customers

Altera also alleges that Papst "interfere[d] with [Altera's] business relationships" by

---

[4] The only authority Xilinx cites is *Calix Networks, Inc. v. Wi-LAN, Inc.*, No. 09-CV-6038-CRB, 2010 WL 3515759 (N.D. Cal. Sept. 8, 2010), a motion to compel discovery case.  In *Calix Networks*, the court's decision to compel discovery was also premised on the likelihood that the defendant engaged in "enforcement" activity related to the patents-in-suit.  *Id.* at *6.

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

1  threatening Altera's customers.  Altera Opp. 3, 8.  Altera analogizes to *Campbell Pet Co.*, where

2  the Federal Circuit found that specific jurisdiction was justified when the defendant engaged in "a

3  form of self-help patent enforcement" by enlisting a third party to remove the plaintiff and its

4  products from a sales convention.  *Radio Sys.*, 638 F.3d at 791 (citing *Campbell Pet Co.*, 542 F.3d

5  at 887).  This Court rejects Altera's argument because Altera has pointed to no evidence that Papst

6  has threatened Altera's customers.  Indeed, Altera readily admits that it "does not know whether

7  Papst contacted any of Altera's customers."  Altera Opp. 8.  Papst denies Altera's allegations.

8  Papst Reply-Altera 6.  "Although we must resolve factual conflicts in [Plaintiffs'] favor, [they are]

9  entitled to only those inferences that are reasonable."  *Autogenomics*, 566 F.3d at 1018.  This

10  Court finds Altera's allegations unreasonable because if Altera's customers were actually

11  threatened by Papst, Altera would have had access to this evidence and could have submitted it to

12  the Court for consideration.  Altera did not.  Accordingly, Altera's bald allegations that Papst may

13  have threatened Altera's customers are insufficient to vest this Court with personal jurisdiction

14  over Papst.

15  **8.      Papst's prior patent infringement lawsuits in California**

16  Altera also alleges that Papst, through its past negotiations and lawsuits regarding different

17  patents, has "engaged in judicial enforcement activities in California multiple times before."

18  Altera Opp. 7.  However, Papst's enforcement activities regarding other patents are irrelevant to

19  the question at hand: whether this Court can assert specific jurisdiction over Papst based on its

20  efforts to enforce the patents-in-suit. Plaintiffs' case does not arise out of Papst's enforcement of

21  *other* patents.  The Federal Circuit has "consistently" made clear that the "other activities" for

22  purposes of personal jurisdiction must relate to "the relevant patents."  *Avocent*, 552 F.3d at 1334.

23  Papst's litigations in this state involving other patents are irrelevant for purposes of specific

24  jurisdiction.

25  **9.      Summary**

26  In sum, Plaintiffs have failed to meet their burden to make a prima facie showing of

27  relevant jurisdictional facts to withstand a motion to dismiss.  *Mavrix*, 647 F.3d at 1223.  Papst

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California

certainly has many connections to the state of California.  For example, Papst purchased the patents-in-suit, which were invented by individuals residing in California while working for Rambus in California.  Papst then pursued Xilinx and Altera, two companies headquartered in California.  Papst did so by sending multiple letters to Altera and Xilinx, visiting the California offices of Altera and Xilinx on several occasions, alleging that the products made by Altera and Xilinx infringe the patents-in-suit, and demanding that Altera and Xilinx pay for a license to the patents-in-suit or else face patent litigation in the forum of Papst's choosing.  Meanwhile, Papst continues to earn millions each year from California companies through royalties on other patents.  In the past, Papst has called on the courts of California to litigate patent infringement lawsuits against thirteen different California technology companies.  Nonetheless, the Court determines that these facts are either related solely to Papst's attempts to license the patents, which the Federal Circuit has held insufficient, or according to Federal Circuit law are irrelevant to the parties' instant dispute.  Accordingly, even when considered as a whole these connections are insufficient to vest this Court with specific jurisdiction over Papst.

Plaintiffs contend that by refusing to exercise personal jurisdiction in this case, "foreign non-practicing entities would be free to repeatedly and aggressively enforce their patents against California companies, leaving California residents with no recourse to seek a declaratory judgment in their home forums."  Xilinx Opp. 1.  However, by statute, foreign patentees are subject to the jurisdiction of the Eastern District of Virginia, 35 U.S.C. § 293, and Papst has consented to the jurisdiction of Delaware—the state of incorporation for both Plaintiffs.  Although Plaintiffs prefer a declaratory judgment action in their home forum, "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  As this Court must follow Federal Circuit precedent, this Court declines to assert personal jurisdiction over Papst.

### C.      Altera's Request for Additional Discovery

Altera requests that this Court grant jurisdictional discovery into Papst's prior enforcement

23

United States District Court
Northern District of California

1  activities in California in the event that this Court finds that it lacks personal jurisdiction over

2  Papst.  Altera Opp. 11-12.  Papst responds that jurisdictional discovery is not warranted here,

3  because Papst already presented its corporate representative for deposition in New York, and that

4  even with this discovery Plaintiffs have been unable to meet their burden to establish a prima facie

5  case of personal jurisdiction over Papst.  Papst Reply-Altera 11.

6     "Discovery may appropriately be granted where pertinent facts bearing on the question of

7  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data*

8  *Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).  However, "[i]n

9  granting discovery, the trial court is vested with broad discretion." *Id.*  "[A] trial court may deny

10  jurisdictional discovery when it is clear that further discovery would not demonstrate facts

11  sufficient to constitute a basis of jurisdiction, or where the request for discovery is based on little

12  more than a hunch that it might yield jurisdictionally relevant facts[.]" *Nuance*, 626 F.3d at 1235-

13  36.

14     Because Altera has failed to make the prima facie showing of jurisdiction over Papst even

15  after Papst voluntarily provided jurisdictional discovery, the Court determines that any further

16  jurisdictional discovery would be a waste of resources for both the parties and for this Court.

17  Accordingly, the Court concludes that Altera's claim that it will discover jurisdictionally relevant

18  facts if given another shot at more discovery is based on "little more than a hunch." *Nuance*, 626

19  F.3d at 1235-36.  Thus, the Court exercises its discretion to decline Altera's request for additional

20  discovery.

21     **D.**  **Papst's Motion to Transfer Venue**

22     Even where this Court lacks personal jurisdiction over the defendant, this Court may use

23  its authority under 28 U.S.C. § 1406(a) to transfer this case to another district.  *Goldlawr, Inc. v.*

24  *Heiman*, 369 U.S. 463, 466-67 (1962).  Under 28 U.S.C. § 1406(a), if the court determines that

25  personal jurisdiction is lacking or if venue is improper, the court must either dismiss the action or,

26  if it is in the interests of justice, transfer the case to a district or division in which it could have

27  been brought.  *Goldlawr*, 369 U.S. at 466 ("The language of § 1406(a) is amply broad enough to

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

1   authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to

2   venue, whether the court in which it was filed had personal jurisdiction over the defendants or

3   not."); *see also* 28 U.S.C. §1406(a).

4        In the instant case, Papst has sued Plaintiffs in the United States District Court for the

5   District of Delaware for their alleged infringement of the patents-in-suit. *Papst Licensing GMBH*

6   *& Co. KG v. Altera Corp.*, No. 15-CV-162-LPS-CJB (D. Del. Feb. 17, 2015); *Papst Licensing*

7   *GMBH & Co. KG v. Xilinx, Inc.*, No. 14-CV-1376-LPS-CJB (D. Del. Nov. 7, 2014). The interests

8   of judicial efficiency would be furthered by Plaintiffs pursuing their claims for declaratory relief

9   on the patents-in-suit in those already-pending actions, rather than transferring their claims in

10   these actions to Delaware for consolidation. Moreover, Plaintiffs have not asked this Court to

11   transfer these actions to Delaware if the Court determines that the Court lacks personal jurisdiction

12   over Papst in the instant case. Accordingly, rather than transferring Plaintiffs' declaratory

13   judgment actions to the District of Delaware, the Court will instead dismiss them for lack of

14   personal jurisdiction.

15   **IV.   CONCLUSION**

16        For the foregoing reasons, the Court hereby DENIES Altera's request for additional

17   discovery and GRANTS Papst's Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.

18   The Clerk shall close the files.

19   **IT IS SO ORDERED.**

20

21   Dated: July 9, 2015

22                                                    LUCY H. KOH
                                               United States District Judge

23

24

25

26

27

28

Case Nos. 14-CV-4963-LHK;14-CV-4794-LHK
ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS

United States District Court
Northern District of California